IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
|    PLAINTIFF, | * |
| | * |
| v. | * CASE NO. 2:06CR00277-WKW-SRW-1 |
| | * |
| MAURICE COX, | * |
| | * |
|    DEFENDANT. | * |

SENTENCING MEMORANDUM

I.  PROCEDURAL HISTORY

Maurice Cox is a 56 year old defendant with significant medical problems. These problems have been made known to the Court and United States Marshals Service during the pendency of Cox's incarceration. He has suffered from a long term substance abuse problem that has created his present and past legal problems. At first blush Cox's prior arrest history looks bad. However, as will be later explained, the conduct associated with those arrests was not serious given the minor dispositions. It becomes obvious in reviewing this situation that most of Maurice Cox's legal problems surfaced in 1998 following the death of his wife. His addiction to crack cocaine began and the tumultuous life that would follow.

There is far more good about Maurice Cox than bad. He has raised two fine respectable sons, both who will be present to speak on his behalf at sentencing. Both of his sons have been outstanding athletics. His younger son is the quarterback at Jacksonville State University.

II.  THE DEFENDANT

Maurice Cox was arrested on November 21, 2006. He was indicted and charged with Distribution and Possession with Intent to Distribute Cocaine Base. (21 U.S.C. §851); Felon in Possession of a Firearm (18 U.S.C. §922g); Possession of an Unregistered Firearm (28 U.S.C. §5841, 5861(d), 5871); and Possession with Intent to Distribute Cocaine Base (21 U.S.C. §851).

He entered a plea of guilty on July 31, 2007 and is due to be sentenced on January 30, 2008. The suggested guideline is 120 months because of a minimum mandatory sentence

requirement. The actual guideline range should be base level 24, Criminal History Score I, guidelines 51 to 63 months.[1]

Cox has provided substantial assistance to the government and as a result. If granted, the government will file a 5K1.1 motion for a downward departure of three levels. This will eliminate the minimum mandatory 120 months guidelines. This will also reduce the base offense level to 21, Criminal History Score of I, and guidelines of 37 to 46 months. Cox is urging the Court to impose a bottom of the guidelines decision at 37 months.

### III.  ARGUMENT

#### A.  Introduction

[E]very lawyer engaged in defending criminal cases knows that often a finding of guilt is a foregone conclusion and that the real issue centers about the severity of the punishment. *Smith v. United States,* 223 F.2d 750, 751 (5th Cir. 1955).

The *Booker* decision has two parts. In the first part, the Court held that the Federal Sentencing Guidelines, promulgated pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.*, violated a defendant's right to a jury trial under the Sixth Amendment. This was so because the Guidelines required a judge to find facts that can increase a defendant's sentence beyond what could be imposed solely based on the jury's verdict. As a remedy, in the second part, a different majority of the Court severed two parts of the Act, 18 U.S.C. § 3553(b)(1), which made the guidelines mandatory, and 18 U.S.C. §3742(e), which mandated a *de novo* standard of review. With these modifications, the Court noted that "the Federal Sentencing Act . . . makes the Guidelines effectively advisory." *Booker*, 125 S. Ct. at 757.

The return to the exercise of true judicial discretion in sentencing is explained in these words of the Supreme Court:

> We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. Indeed,

---

[1]This was derived using the crack cocaine amendment to the guidelines whereby the base offense level is reduced by two levels.

> everyone agrees that the constitutional issue presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

Booker, 125 S. Ct. at 750 (citations omitted).

With the decision by the United States Supreme Court that the Federal Sentencing Guidelines were unconstitutional, its Booker decision holds that a defendant's Sixth Amendment rights are violated where the mandatory guidelines required judges to find facts resulting in specific sentencing consequences having the effect of increasing a defendant's sentence beyond that range which would apply either by a jury's verdict or by a plea of guilty by the defendant. The Court, in a separate majority opinion, which has been described as the "remedial" opinion, deemed that the guidelines are now merely "advisory" and that district judges are to "consider" the guideline ranges presented in the sentencing context while having the discretion to form a sentence in light of other statutory concerns, specifically those presented in 18 U.S.C. §3553(a). Id.

### B.  What Must Be Considered In Post-Booker Sentencing

Post-Booker the guidelines become but one of several factors to be considered by the court in the sentencing process. First, the guideline range, including policy statements are to be considered under 18 U.S.C. § 3553(a)(4) and (5) as an advisory guide. Applicable departures under the guidelines are also to be considered. Now the courts must also consider the statutory directives presented in other parts of § 3553(a) as well as the Congressional directive that "No limitation shall be placed on the information concerning the background, character and conduct of" the defendant in the course of the sentencing process. 18 U.S.C. § 3661. In other words the court is free to sentence just like it did pre-November 1987.

Departures under § 5H1 which, by the Sentencing Commission's policy statements, had all but become mandatorily inapplicable to defendants and their personal circumstances, are no

longer outside the scope of a sentencing court's assessment of a reasonable sentence.

Section 3553(a)(1) specifically directs that the court shall consider during the sentencing process "the history and characteristics of the defendant". Therefore, such matters as age, employment, family ties, good deeds, and community ties, for instance, can and should be considered by this Court in fashioning a reasonable sentence. Under the same subsection of §3553, the Court is directed to consider the "nature and circumstances of the offense" without the mandatory directives of the now advisory guidelines. The Court is directed in §3553(a)(2)(A) to fashion a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant; . . . ." Under *Booker*, each of these factors is to be separately considered by a court as part of the entire sentencing process.

Further, § 3553(a)(6) directs the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .." That certainly means more than calculating each defendant's guidelines and simply imposing the mandated sentence. Finally, under § 3553(a)(7), the Court shall consider "the need to provide restitution to any victims of the offense." The Court must now analyze whether a deviation from the "advisory" guideline range is appropriate giving due consideration to each of the factors enumerated. The former mandatory nature of the guidelines and decisions supporting the policies of the Sentencing Commission omitted consideration of personal and historical characteristics.

At sentencing, Mr. Cox must be granted the opportunity to present any relevant evidence about his personal history and characteristics as required by § 3553(a) and 3661 and present argument about the role that each subsection of 3553(a) should play in the sentencing process.

### C. Crack Cocaine

The guideline cut off for crack cocaine as noted in the presentence report is 5 to 20 grams.

Regardless of the guideline book used for sentencing purposes, the 6.29 grams of cocaine base is slightly above the 5 gram threshold amount rather than the ceiling amount of 20 grams. This should be considered by the Court as mitigation.

Cox should receive the benefit of the November 1, 2007 amendment to the sentencing guidelines as relates to cocaine base. The 6.29 grams of cocaine base under the new guidelines would call for a decrease in the base offense level from 26 to 24. Based on a Criminal History Score of I, the guidelines should be 51 to 63 months. As mitigation Cox urges the Court to look to the next lower level, 22, based on the small amount of cocaine and consider a drug guideline base of 41 to 51 months.[2]

### D. Weapon Enhancement U.S.S.G. §2D1.1(b)(1)

The presentence report suggests a two level 2D1.1(b)(1) enhancement because Cox possessed a short barrel shotgun during the course of the offense. Cox would note to the Court that the weapon was located in a residence near where Cox was arrested. At no time when Cox possessed the drugs referenced **in this case** did he have in his hand or on his person, the short barrel shotgun.

## IV. PRIOR RECORD

The presentence report of October 9, 2007, page 17, paragraph 96, Factors Warranting a Departure references the Court's ability to depart from the guidelines in a case where the defendant's criminal history score may under represent the seriousness of the defendant's past criminal conduct.

Given that the Court, at first blush, might think Cox's prior arrest history is significant, counsel has gone through all of his prior arrests and categorized them for the Courts convenience.

---

[2]This level, however, does not contemplate the impact of a 5K1.1 motion to be filed by the government. A three level downward departure for substantial assistance would then cause the base level to be 19, Criminal History Score I, guidelines 30 to 37 months.

It bears noting that the bulk of this prior arrests were either **dismissed**, **disposed of with the payment of minimal fines, and/or the disposition was unknown**.

Counsel is unable to assign any reason to volume of arrests except the defendant's substance abuse.

Counsel urges the Court not to penalize Cox for misdemeanor arrests and dispositions

**FIRST FELONY** at age 44 - Unlawful Distribution - 3 years probation - 8 days in jail.

**DISPOSITION UNKNOWN**[3]

    Arrests:

        30-Unlawful use of motor vehicle

        32-DUI

        33-Simple Assault

        34-POM with intent to distribute

        37-Reckless Endangerment

        38-Disorderly Conduct

        39-Reckless Endangerment

        40-Menacing

        41-Assault

        42-Failure to comply

        44-Reckless Endangerment

        45-Public Intoxication

        46-Failure to Pay

        58-Assault III

        61-POM Assault III

        63-Assault III

---

[3] It would clearly be unfair to penalize Cox for arrests when it is unclear if he was convicted, found not guilty, or nol prossed.

      64-Assault III

      65-Harassment

      68-Failure to Appear

**DISPOSITION KNOWN:**

      31-Racing - **Dismissed** - $10 fine

      35-Assault & Battery - **Not Guilty** - **Dismissed**

      36-Possession of Marijuana - 6 month probation - **dismissed**

      43-Driving while licensed revoked - $126 Court cost

      47-Defraud of Secured Credit - **Dismissed** Rest. $233.59

      48-Driving while licensed revoked - Fined $100 - $69 Cost

      49-DUI - **dismissed**

      50-Harassing Communication - **Dismissed** on payment of court costs

      51-Driving while licensed revoked - fined $1,000 plus $100 court costs

      52-Failure to Pay on Original Charge of Speeding - Fined $20 - $69 court costs

      53-DVT POM - **Dismissed**

      54-Receiving Stolen Property - **Nol Pros**

      55-Menacing - Dismissed - no payment of $138 plus court costs

      56-TOP I - **no billed**

      57-Speeding - Fined $20 plus $71 court costs

      59-Unregulated MV plus suspended license - Fined $135 - $100 cost - $50 VWF

      60-Negotiating worthless instrument - **nol prosed**

      62-Speeding - Fined $40 - plus $104 court costs

      66-Assault and carrying a pistol without a permit - **no billed**

      67-Unlawful possession of controlled substance (Instant Federal Case)

Further, the presentence report, paragraph 68, list other arrests in Massachusetts. These are as follows:

Assault and Battery with a dangerous weapon (Dkt. #84CR7271A) - **Dismissed** 01/4/85;

Assault and Battery (Dkt. #813656ZZ) - **Dismissed** 10/14/82; Assault (Dkt. #806551) - **Dismissed** 10/16/80; Compulsory Insurance Violation (Dkt. #137993) - **Dismissed** 10/19/79.

Of all the 43 prior arrests listed above, there is only proof of convictions on eight. Of the eight one was a misdemeanor drug possession, and the remainder traffic violations.

Therefore, Cox urges the Court to disregard his prior arrest history as a reason to upward depart from the guidelines.

## V.  CONCLUSION

Cox has substantial medical problems as addressed in the presentence report. He has been confined in jail a year and two months. This time has been very difficult for him given his poor health. He has provided substantial assistance to the government and will continue to do so. He is urging the Court to impose a sentence not to exceed 37 months. This factors in the crack guideline amendment, reduction, and his cooperation with the government.

Respectfully submitted,

S/Susan G. James
SUSAN G. JAMES
Attorney at Law
600 South McDonough Street
Montgomery, Alabama 36104
Phone: (334) 269-3330
Fax: (334) 834-0353
E-mail: sgjamesandassoc@aol.com
Bar No: ASB7956J64S

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2008 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Verne H. Speirs
Assistant United States Attorney
P.O. Box 197
Montgomery, Alabama, 36101

    Respectfully submitted,

        S/Susan G. James
        SUSAN G. JAMES
        Attorney at Law
        600 South McDonough Street
        Montgomery, Alabama 36104
        Phone: (334) 269-3330
        Fax: (334) 834-0353
        E-mail: sgjamesandassoc@aol.com
        Bar No: ASB7956J64S